JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

GARTH HIRE (CABN 187330)
Assistant United States Attorney

    1301 Clay Street, Suite 340-S
    Oakland, California 94612
    Telephone:  (510) 637-3929
    Facsimile:  (510) 637-3724
    E-Mail:   Garth.Hire@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-00726 CW |
| Plaintiff, | ) ) | UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT LAURO CORRAL |
| v. | ) ) | |
| LAURO CORRAL, | ) ) | Hearing Date:  August 23, 2008 Hearing Time:  10:00 a.m. |
| Defendant. | ) ) | |

UNITED STATES' SENTENCING MEMORANDUM
FOR DEFENDANT LAURO CORRAL

# I.

# INTRODUCTION

Defendant Lauro Corral (defendant) is an illegal immigrant who has chosen to make his living here in the United States by selling large quantities of narcotics. Defendant's conviction in this case subjects him not only to a statutory five-year mandatory minimum prison term but also to an advisory guideline sentence of 188-235 months imprisonment as a career offender pursuant to United States Sentencing Guideline (U.S.S.G.) Section 4B1.1(b)(B). For the reasons set forth below, the government respectfully requests that this Court, after considering the advisory sentencing guidelines and the factors set forth in 18 U.S.C. § 3553(a), sentence defendant to the low-end of the applicable guideline range and impose a sentence of 188 months imprisonment, a four-year term of supervised release, and a special assessment of $100.

# II.

# PROCEDURAL HISTORY

On November 15, 2007, a federal grand jury indicted defendant for two counts of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count One charged defendant with distributing 43.6 grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii). Count Two charged defendant with distributing 94.9 grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). On April 23, 2008, defendant pleaded guilty to Count One pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). As part of the agreement, the government agreed to dismiss Count Two of the indictment at sentencing. The Court ordered the United States Probation Office (USPO) to prepare a presentence report (PSR). A sentencing hearing is presently scheduled for August 13, 2008.

# III.

# SENTENCING GUIDELINES CALCULATIONS

The government agrees with the USPO's computation of the sentencing guidelines applicable to defendant (contained in PSR ¶¶ 20-34) as follows:

| | | | |
|---|---|---|---|
| Base Offense Level: | 34 | U.S.S.G. § 4B1.1(b)(B) (career offender) |
| | – 3 | U.S.S.G. § 3E1.1(a) & (b) (acceptance of responsibility) |
| Total | 31 | |

## IV.

## DISCUSSION OF GUIDELINES CALCULATIONS

**A.     U.S.S.G. § 4B1.1(b)(B) (base offense level)**

Defendant admitted in the factual basis section of the plea agreement (paragraph 2) that on March 8, 2007, at an apartment complex in Richmond, California, he distributed 45.3 grams of a mixture and substance containing 43.6 grams of actual methamphetamine to another person in exchange for cash. He further admitted that on March 20, 2007, at the same location, he distributed 110.5 grams of a mixture and substance containing 94.9 grams of actual methamphetamine to another person in exchange for cash.

Defendant also admitted that prior to distributing methamphetamine on March 8 and March 20, 2007, he had previously been convicted of two felony narcotics trafficking offenses, specifically, (1) Possession of Marijuana for Sale, in violation of California Health and Safety Code Section 11359, a felony, on or about May 20, 2002, in Kern County Superior Court; and (2) Possession/Purchase of Methamphetamine for Sale, in violation of California Health and Safety Code Section 11378, on or about September 18, 2002, in Santa Clara County Superior Court. By virtue of these prior convictions, defendant's instant violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) makes him a "career offender" under the sentencing guidelines. As a result, the statutory maximum sentence for defendant's offense of conviction is forty years imprisonment and the applicable career offender guideline level is 34 pursuant to U.S.S.G. § 4B1.1(b)(B).

**B.     U.S.S.G. § 3E1.1 (acceptance of responsibility)**

The government respectfully recommends that the defendant be granted a three-point reduction in offense level under U.S.S.G. §§ 3E1.1(a) and (b) for acceptance of responsibility.

**C.     Ultimate Guideline Offense Level and Guideline Range**

With an adjusted offense level of 31 and a criminal history category of VI, the applicable advisory guideline range is 188-235 months imprisonment. The government recommends that

defendant receive a sentence at the low-end of this guideline range, namely, 188 months imprisonment. As explained below, not only is such a sentence supported by the guidelines promulgated by the United States Sentencing Commission, but it is also justified by the sentencing factors set forth by Congress in 18 U.S.C. § 3553(a).

## V.
## STATUTORY SENTENCING FACTORS

### A.   The Sentencing Guidelines Post-*Booker*

Under the Sentencing Reform Act as modified by *United States v. Booker*, 543 U.S. 220 (2005), this Court must analyze and consider the guideline factors before imposing sentences in federal criminal cases. 543 U.S. at 259, 261 (noting that Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"). This Court, having calculated the guideline range in the traditional fashion, should then look to the factors set forth by Congress in 18 U.S.C. § 3553(a) to determine a reasonable sentence for defendant.

### B.   Consideration of the 3553(a) Factors

#### 1.   Nature and Circumstances of the Offense and History and Characteristics of Defendant

##### a.   Nature and Circumstances of the Offense

The nature and circumstances of the offense demonstrate the need for a 188-month sentence. Defendant came to this country illegally and chose to sell narcotics. He twice sold large quantities of highly pure methamphetamine to a government informant, clearly indicating that he is not a low-level dealer. (PSR ¶¶ 5-16). Defendant did so after twice being arrested, charged, and convicted of narcotics trafficking offenses. (PSR ¶¶ 37-38). This demonstrates defendant's willingness to profit from the suffering of others addicted to methamphetamine and his refusal to conform his conduct to the law and to rehabilitate himself. Clearly, the nature and circumstances of the offense demonstrate that defendant poses, and will continue to pose unless incarcerated for a significant period of time, a danger to the community.

### b. History and Characteristics of the Defendant

Defendant has twice been convicted of drug trafficking. In 1997, defendant was arrested in Santa Clara County for possession of methamphetamine for sale. (PSR ¶ 37). Instead of appearing for court, however, defendant absconded. During that period, defendant was arrested with a companion in a vehicle traveling north on Interstate 5 near Bakersfield with one hundred pounds of vacuum sealed packages of marijuana. (PSR ¶ 38). Defendant was convicted of possession of marijuana for sale and sentenced to three years probation and one year in jail. *Id.* After this, defendant returned to Santa Clara County and was sentenced to ten months in jail and two years probation for possession of methamphetamine for sale. (PSR ¶ 37). Finally, defendant was arrested again in Santa Clara County after providing false identification to a police officer and was convicted of a misdemeanor. (PSR ¶ 39). Defendant is a high-level drug trafficker and deserves the career offender sentence he faces.

### 2. Need to Reflect the Seriousness of the Offense

The offense in question, a narcotics trafficking offense by an individual with a history of narcotics trafficking is extremely serious. A sentence of 188 months imprisonment is necessary to reflect the seriousness of defendant's crime.

### 3. Deterrence of Criminal Conduct

By imposing the low-end 188-month guideline sentence on defendant the Court has the opportunity to have a strong specific and general deterrent effect. First, defendant will be specifically deterred from committing more crimes by knowing that another very lengthy prison term awaits him should he re-offend. Equally important though is the opportunity that the Court has to send a message to other repeat offenders engaged in drug trafficking that they too will face lengthy terms of federal imprisonment if caught.

### 4. Need to Protect the Public

The public needs to be protected from recidivists, like defendant, who continue sell narcotics even after being previously convicted and punished. A 188-month sentence of imprisonment will without question protect the public, including those members of society who are physically dependent on the product defendant sells.

UNITED STATES' SENTENCING MEMORANDUM
FOR DEFENDANT LAURO CORRAL        4

### 5. Need to Provide Defendant with Education

The need to provide defendant with education and vocational skills, while important in most contexts, must be placed in a subordinate position to the important considerations of deterrence, protection of the public and the need for the sentence to reflect the seriousness of the offense. *See United States v. Wilson*, 350 F. Supp. 2d 910, 921-22 (D. Utah 2005) (noting that legislative history of Sentencing Reform Act demonstrates that Congress intended to place rehabilitation as a secondary consideration where serious crimes were involved). Defendant will have access to many programs in the prison system to which he can avail himself. Neither the presence nor absence of any further educational programs should weigh heavily in this Court's sentencing determination.

### 6. Need to Avoid Unwarranted Disparity in Sentences

Finally, a sentence in accordance with the guidelines also properly accounts for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Indeed, a sentence within the sentencing guidelines range is the best way to satisfy this factor.

## VI.

## NEITHER A DOWNWARD DEPARTURE NOR A *BOOKER* VARIANCE IS WARRANTED

The PSR suggests that a downward departure and/or *Booker* variance may be warranted. The government does believe this to be the case.

First, the PSR notes that the Court can downwardly depart if it finds the career offender guideline over-represents the seriousness of defendant's criminal history or the likelihood he will commit other crimes. (PSR ¶¶ 83-84). Such a downward departure is not merited in this case because defendant has continued high-level drug trafficking despite his prior convictions and there is every indication he will continue to do so. Even if such a departure were warranted, the guidelines limit the extent of that departure. Guideline section 4A1.3(b)(3)(A) states that "[t]he extent of a downward departure under this subsection for a career offender within the meaning of § 4B1.1 (Career Offender) may not exceed one criminal history category." Thus, even if the

Court finds that the career offender guideline overstates defendant's criminal history category it should not depart under the guidelines more than one criminal history category, which would produce an advisory guideline range of 168-210 months imprisonment. Of course, the Court is free to impose a lower sentence pursuant to 18 U.S.C. § 3553(a).

Second, the PSR correctly states that defendant has been extraordinarily forthcoming with authorities about his conduct and has been extremely willing to aid investigators. (PSR ¶ 86). The government is well aware of and greatly appreciates defendant's efforts in this regard. For this reason, the government allowed defendant to plead guilty to count one rather than requiring him to plead guilty to count two. As a result, defendant faced a statutory five-year mandatory minimum sentence and a guideline range of 188-235 months instead of a statutory ten-year mandatory minimum sentence and a guideline range of 262-327 months. This decision was not based on the strength of the evidence. Defendant was clearly captured on audio and video distributing large quantities of highly pure methamphetamine. This concession by the government was a direct response to the factors set forth in the PSR in favor of departure and guideline variance and more than adequately addresses those issues.

## VII.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court, taking into consideration the sentencing guidelines and sentencing factors set forth in section 3553(a), sentence defendant to the low-end of the applicable sentencing guideline range, namely, 188 months imprisonment, impose a four-year term of supervised release (under the terms and conditions recommended by the USPO), and order defendant to pay a $100 special assessment.

DATED: August 6, 2008                                  Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

           /s/
GARTH HIRE
Assistant United States Attorney